We'll pass the time for argument in Baker v. Exxon. This is a very senior distinguished panel consisting of the chief judge of this court, the chief judge emeritus of this court, and our distinguished colleague from the state of Alaska. And we have all been here before. So we will proceed to hear the case. And we will not be rigid in the time limit given, which is only 20 minutes per side. We will not interrupt you in the middle of a one-syllable word. But we are very familiar with both the law and the facts of this particular case and want to concentrate on exactly what this panel needs to decide now. With that, we'll hear from the appellants. Good morning. Good morning, Chief Judge Schroeder. May it please the court. I'll try to save five minutes for rebuttal. And since, as you said, that you have been over this before, it's probably best that I start with what's new, since you last heard argument in this case. And by far, the most important new development is the Supreme Court's decision in State Farm v. Campbell. In State Farm, in one key respect, the Supreme Court turned an important element of punitive damages law right side up. The court rejected the notion and an understandable but mistaken notion that somehow the largest compensatory judgments necessarily call for the largest punitive damages. The court said, that's not right. In fact, if you focus on the necessity of punishment and deterrence, the court recognized that large compensatory costs may already accomplish both of those objectives, punishment and deterrence. And just let me read you the sentence of the way the court precisely says that, it should be presumed that a plaintiff has been made whole for his injuries by compensatory damages. So punitive damages should be awarded, should only be awarded, if the defendant's culpability after having paid compensatory damages is so reprehensible as to warrant the imposition of further sanctions necessary to achieve punishment and deterrence. That very new way of looking at it was actually foreshadowed by this court's November 2001 opinion, in which you noted that it was a close question whether punitive damages were simply barred in this case, that there was, you said, force of logic and policy to the argument that punishment and deterrence had already been satisfied when over $3,000 million had been imposed in costs and voluntary cleanup on the defendant in this case. The only thing that was missing was precedent. And I think the Supreme Court's decision in State Farm supplies that precedent. Now, we're not asking this panel to revisit the decision not to strike the punitive damages claim, but we certainly believe that the considerations that strongly suggested that under this approach of State Farm no punitive damage award is permissible, suggest a fortiori that no such award should exceed $25 million. Surely, the payment of $3.5 billion is one of the greatest deterrence we've ever seen in the civil law. And that leads to the question of whether there is an amount necessary for punishment. And here, unusually in this case, we don't have to speculate. Counsel? Yes, Judge Kleinsch. I'm puzzled by something here. In our previous opinion, we spent about 13 pages going over what the amount should be after first trudging through all the issues that led up to whether there could be punitive damages at all. We rejected the arguments, acknowledging that some were close on whether there should be punitive damages and said it was allowable. Then in the 13 or so pages of F-3rd, going over the amount, we went at it every which way and we kept coming up to a number around $1.1, $1.2 billion. Your brief says the district court ignored the mandate of this court. And you cited a lot of authority that a lower court is bound by the mandate of the higher court. And it doesn't matter that the lower court thinks the higher court was wrong or didn't have good enough authority for it. But it sounds like you're doing the same thing. You're saying we shouldn't do what we said before was the right thing to do. Instead, we should basically erase the punitives award. I don't get it. How could we do that without applying that rarely applied branch of law of the case doctrine that allows a court to erase its prior decision on account of its being plainly wrong? Judge Kleinfeld, two responses. One, I don't think we have to fight the court's prior opinion. I recognize that there were places where you mentioned, among the numbers, twice the amount of a loss under one statute, et cetera, that produced a number of a billion dollars. But by no means did I read your opinion as suggesting that that is the answer. And we do have, indeed, I think a powerful. Nevertheless, we said at the end of it that our mandate was that the district court should recalculate consistently with this opinion. That is correct. But I think consistent with the opinion that you wrote, you did say what was necessary for punishment and deterrence. And I'll go through the opinion. The second answer is, I do think the State Farm is a very major development since you wrote that opinion. That is to say, the part of the opinion that says it's a close, your analysis of that is. How does State Farm change our opinion, as opposed to showing that where there was no clear authority before, now we have the Supreme Court saying we were right? Your previous argument is basically where there was no clear authority before on one of the issues we tackled. The Supreme Court said we were right. Well, in two respects. First of all, State Farm says, you all said, there's logic in policy to the notion that this kind of cost might simply rule out punitive because there's no predicate for punishment and deterrence. The court said for the first time that only if a defendant's culpability after having paid compensatory is so reprehensible as to warrant further sanctions, really endorsing that. Secondly, your opinion noted a number of numbers, some of which are that the comparable penalty you noted, there was an agreement of $150 million, which was reduced to $25 million for reasons that are directly germane. It seems to us to be the correct number. You also said in the opinion that it is generally not proper to count in what you call the numerator for ratio purposes amounts that have been paid in settlement. And that makes all the sense in the world because here what you had was often efforts at a solution where you have purely economic injury. And there is prompt payment. $300 million paid out within two years. I think the chart starts on the excerpts of record at page 456 of when those payments were made. $300 million paid out. The bulk of it, that chart will show in the fall of 1989. In many cases before the economic loss has been suffered, it makes sense to look at the fact, as you said in your opinion, that the judgment was for, we know precisely what the judgment was for, is $19,500,000. And that doesn't, you know, the ratio never binds you. But it also is a case in which the other thing the Supreme Court says in State Farm, I believe for the first time, is that where compensatory damages are substantial, and that was $1 million in State Farm, where compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limits of the due process guarantee. If that's not this case, I don't know what case it would be. If $3,000 million isn't substantial. What do you understand the numerator to be in this case? The measure of it? The measure in this case, the numerator would be $20.3 million. And that consists of the judgment in the case. The usefulness of the ratio is it does give you a real number. It's not binding. If there are other considerations, if there are other factors, the court says there's no magic ceiling. But it does give you a fixed number to start with. In this case, at page 404. Oh, no, what do you, I don't want to know the fixed number. I just, how do you calculate it? What, in your mind, what is it, in any case, looking at State Farm and then extrapolating? Because I may have a different idea. In any case, I think the numerator is the compensatory damages paid as a result of the judgment. See, I read that it's the harm that basically is suffered by the plaintiffs, which is compensatory damages. But, formally, but State Farm talks about punishing for its actions against the Campbells. Well, as this Court noted, the harm was largely avoided, economic injury, by prompt early payment. It's the reason that, and I don't otherwise know if Judge ---- That the prompt recovery avoided further harm, it seems to me. Well, if ---- It hasn't reduced the number of, the harm that you caused as a result of the accident. It may have been reduced further compensatory. Well, let me just give you one example, Judge Schroeder, where I think that is, it is clearly that that takes into account, and it accounts for a lot of the $303 million that was paid out. Where you're paying people who anticipate an economic loss for the next season, and you make a payment, you set up claims offices and make a payment in advance of the loss having suffered, that's what makes sense of what this Court said. I mean, Judge Kleinfeld asked me about the mandate of the holding, and this Court says that the amount that a defendant voluntarily pays before judgment should generally not be used as part of the numerator in punitive damages review, because that would deter settlements prior to judgment. That was a considered judgment. This Court noted that the net compensatory damages were $19,590,000. I understand your, I understand your argument with respect to that language, and it cites opinions with which I am quite familiar. And I have a pretty good idea of what I thought we meant by that. But I'm just asking in terms of the State Farm analysis, which is what's new. We haven't seen it before, and that's really as you started your argument. It seems to me the focus of the State Farm argument of that case is that the Utah Supreme Court was way off base in looking at the damages, focusing on overall damage caused around the country by this policy, as opposed to the harm that was caused to these plaintiffs. And so I'm just suggesting to you that as I read State Farm, the numerator should be the harm that was caused to these plaintiffs. Well, precisely what State Farm used for the numerator was the actual amount of the judgment of $1 million. They used that as the numerator, even though in some ways that may have, they noted that that included both some amounts that could be seen as punitive, but in any event, it seems to me that once you start trying to move away from And then the punitives in that case became, were wound up being hundreds of times greater than that. It was, and the court has noted that it seems useful to me to start with, the ratio is useful to start with as a comparison of what was the compensatory judgment actually paid, and what was the punitive judgment actually paid, and it gives you a number that's not, doesn't determine your outcome. In this case, I mean, it may be that that is principally about deterrence in any event, and in this case, I think, this is a case in which deterrence has been so fully satisfied by the amount that we look to penalties, and if you look to the criminal and civil penalties as a comparison, they too bring you very much in line with this number. I mean, usually courts are in the position of saying, what might a criminal fine realistically be expected to be? And here, the senior law enforcement officials of both the United States and the state of Alaska agreed that the appropriate amount of punishment under the Alternative Fines Act, 3571D, would be $25 million. I mean, you did mention the sum of $150 million. What is the basis for calculating the fine? The basis for calculating the fine by those two officials was the amount that they thought appropriate as punishment, and at the sentencing hearing in the state. Under the criminal penalty. Under those regulations, and they. Why should that be determinative here after State Farm, where State Farm says that you're supposed to look at the actions that were, that affected these plaintiffs, and the harm that was caused to them? Well, because I understand that to ascertain, yes, to ascertain the harm component, you're looking at the harm to these plaintiffs, not to the environment, et cetera. And to be sure, the $25 million that was one of the largest fines, if not the largest ever imposed, that $25 million was for all of the harm, including the harm to economic interest. It was. In order to compensate these plaintiffs? No, but. No. No, no, well, it covered, it was a fine for that injury. Of course, the punitive damage was not to compensate the plaintiffs in any case. Punitive damage is. I understand that. I'm asking about the proper calculation of the compensation that is appropriate to compensate these plaintiffs for the economic harm. And it seems to me that is the economic harm that was suffered by these plaintiffs. That's, and I'm just telling you, why is that wrong? Why should we jump over and talk about fines under a criminal system? Oh, I'm sorry. I thought I had answered your question. Let me be precise about the numerator. It seems to me that under what this court said in its prior opinion about generally not taking into account the amounts that a defendant has voluntarily paid before the judgment, taking into account the fact that if you want to have a useful ratio, it's useful to have objective numbers. And the objective number here is the judgment that was paid, that that number makes sense. I don't know where else I could go with that answer except to say that it seems to me that the proper calculation of what the compensatory judgment was is $19,500, plus $700,000 from the state court judgment, which is what comes to $20.3, and the amount of punitives, the other factor in the ratio would be whatever punitive damage amount is appropriate will constitute that ratio. Again, that's not binding. And it doesn't, in my view, lead to an absurd result in the sense that it takes account, as did the state and federal officials, of the amelioration brought about by the efforts of the company in spending. In other words, we take into account what the company has done in preventing more damage, in reducing the amount that these plaintiffs should be regarded as needing to compensate them for their harm? I would not see it as reduction. I would see it as you start with the compensatory judgment, which was $19.5 million. Now, I guess that's, and that takes into account all this mitigating. Yes, and they would have you add to that. No, well, I'm asking you to look at it the other way. Can't you also argue that you're asking that we take away all these things, and that in State Farm, they were saying, no, you look at what was the harm suffered by these plaintiffs. You don't look at what was suffered by other plaintiffs that may be compensable in other suits, but you look at these plaintiffs in this suit. Yes, I understand that. And for purposes of harm, for purposes of harm, for the ratio, you look at that. Now, the other guidepost, it seems to me, the civil penalty, in our view, the potential fine was $28 million. They started at 80, but they realized that doesn't take account of the cleanup, which reduces it to 64 million. And, you know, in our brief, we set out, starting at page 44, why we think that's $28 million. But the debate is really between $28 million and $64 million. And we've never had a better guide on criminal penalties in any punitive damage case I look at, because the governments actually went through and resolved that issue and decided that it should not be $150 million, but $25 million in count of all the activity. So those are both relevant data. And when you look at, and the reason is, of course, that when you look at reprehensibility, when you ask whether this should be an exception to the statement in state form that one-to-one is the appropriate ratio in cases of substantial compensatories, this has to be the case because of the size of the compensatories and the absence of reprehensibility, since this was, this accident was an accident. Counsel, I wonder if your colloquy with Judge Schroeder is mixing two issues together that need to be separated. When we said, held, according to Baines v. Arco, it was Holden, in our previous decision in this case, that the amount that a defendant voluntarily pays before judgment should generally not be used as part of the numerator, that holding was in the context of analyzing the ratio. Yes. However, as I understand the thrust of Judge Schroeder's inquiries to you, they go not only to ratio, but to reprehensibility. We did not suggest in the reprehensibility analysis that that $300 million of harm should not be considered. So what I'm thinking is that the proper analysis is, in terms of considering how reprehensible the conduct is, look at the money that was voluntarily paid after the harm was done, in terms of the ratio, don't. Am I getting that right? Yes, I do think we should separate those out. And with respect to reprehensibility, the early payments, as has been recognized by this Court's opinion and by the officials, should reduce at least, or mitigate any reprehensibility. But if you look at reprehensibility itself, what you see is what this Court said, that there was no violence, there was no intentional spilling, no trickery, that all goes to what is missing from this case. Well, how does what they do later to pay claims to reduce their compensatory damages, how does that affect the reprehensibility of the original conduct? It does. It cannot affect the reprehensibility of the original conduct, but it can overall assessing what is necessary for punishment and deterrence. But let's look at the original. That's where I'm hanging up, too. I don't see how it mitigates reprehensibility. It seems to me it affects the ratio only. I mean, suppose to take a hypothetical case, you had a company that engaged in a practice that was dangerous to its workers. And it knew perfectly well that from time to time there would be accidents that killed workers. So whenever one of them was killed, the company went to the widow, gave her 25 million bucks, kept a lot of the widows quiet. It's reprehensible as can be, even if the ratio is reduced. Yes, I fully understand that, and that's why I want to, if I may, address reprehensibility directly. Yeah, but it seems to me, let me just give you where I'm coming from, and then we'll give the other side equal time. But it seems to me that what they pay out in cleanup and early claims does reduce their compensatory liability. But I don't see why you should, so that we get compensation, that the compensatory damages are reduced. But I don't see why we have to use that as the reduced figure as the numerator figure for the ratio. Because State Farm says, you look at what happened to these plaintiffs. And by the conduct, the original conduct, not everything that they do after the conduct to mitigate compensatory damages. Let me respond to that and then just briefly address reprehensibility itself, which is, I reach State Farm to say you exclude from consideration harm done to other people who are not plaintiffs before you. And so you're limited to looking at the harm to the plaintiffs before you. And what they looked at in State Farm, and you should look at here, I think it's compensatory damage that was actually paid as part of the ratio. Now, on reprehensibility, what is missing from this case that you see in punitive damage cases are one of two things. You either see generally an intentional malice targeted against a victim where punitives are clearly called for. Probably more commonly what you see in punitive damage cases is a circumstance where someone is trying to save money by taking known safety risks to save money on a product because they've got to make another $35 per car if they put the gas tank in one place rather than another. That's missing from both of these, from this case. This was an accident. No company would ever want to incur $3.5 billion in liability. This wasn't something where you had a plan, a harm that you hoped to achieve. What they hoped for was safe passage. So the accidental nature of this, which has been recognized by this Court, we think is really what reduces reprehensibility. And I think that the, when you look at the, if the ratio, if the numerator is anything other than $20 million, where we think that already triggers a one-to-one ratio, then I would think that the proper ratio could be substantially less than one-to-one in a case where, and that's the central message of State Farm, and I'd like to save a little bit of time. We'll give you two minutes for rebuttal, and you've more than used your time, but we'll give the other, set the clock for 25 minutes and we'll let you talk on. In these circumstances, that is, a tanker spill that hurt tens of thousands of people and caused hundreds of millions of dollars of damage, the district court's award is not grossly excessive for a variety of reasons. If you consider only the quantified harm, the award is presumptively, it's within the presumptively constitutional single-digit guideline. If you take into account uncompensated harm and potential harm, as TXO teaches, the real ratio falls to less than four-to-one. Counsel? Yes, sir. This reminds me, this argument would appear to start from scratch, and it seems to me you have to start from the previous decision, because that was the result of very considerable consideration, and it's since been followed in other decisions of this court and absorbed in this court's precedence, so I don't quite see how you start from scratch. Let me address the proposition that I'm starting from scratch. Since this court's decision, we've had a number of decisions in this circuit, Cooper being the best example, in which the actual practice of the courts with regard to punitive damage awards is an affirming... Before the Supreme Court reversed us in Cooper? After the Supreme Court reversed you in Cooper, which is why I think it's significant. ...that pass on punitive damage awards where the single-digit ratios, where there are single-digit ratios is okay, and there's case after case after case that doesn't. The list of the cases is Planned Parenthood, Baines, Hangarder, Zhang, Cooper, and then let's take a look at the Supreme Court trilogy. State Farm, TXO, and Cooper all on remand were single-digit ratios. So there is discussion of one-to-one and four-to-one. However, the courts in action uphold single-digit ratio cases. And Cooper is the best example because in Cooper, you essentially have a company that has a bad photograph at a trade show, and the court describes the actions in Cooper as foolish more than reprehensible, and upholds a nine-to-one award in Cooper. So that is a... That was a very... That was something where if you didn't have punitives, you wouldn't have much of a deterrent at all. And one of the things that State Farm makes clear is if a lot of money is awarded against the defendant, the reluctance of people generally to pay a lot of money acts as a deterrent by itself, so a lower ratio is appropriate, ordinarily not greater than four-to-one. Let me address that directly, and I want to address it in two ways. First of all, in this particular situation, you have 32,000 plaintiffs who were forced together in a mandatory punitive damage class as a result of action by Exxon Corporation. I don't see the relevance of that argument that for each plaintiff it's not that much, because when you're looking at deterrence and punishment, the impact of deterrence and punishment fall on the defendant that's punished and deterred. Let me... Yeah, but you can have a class action where everybody in the class gets a $1.50 and a coupon for a discount on their next car or something. The lawyers get $100 million, and the defendant is put out of business. That will sure deter. It does. Let me address it... First of all, from the proposition from a legal standpoint, I didn't make it up. I got it from Planned Parenthood. And the holding in Planned Parenthood is, in looking at the size of the awards, you do look at it on a plaintiff-by-plaintiff basis. And here we have a collection of 15... of 32,000 plaintiffs with... That was in the context of knocking it down, not building it up. We knocked the award way down in Planned Parenthood. That's correct, but the proposition is clearly made in Planned Parenthood, and it relies on State Farm, which says that you're supposed to take a look at the harm to the individual plaintiff. Now, let me address it from a different perspective. The Amchem case, which we cite in our briefs, stands for the proposition that the imposition of the class structure on a variety of different plaintiffs is... should not affect the substance of the claims of those individual plaintiffs. The class structure is to facilitate getting all of the cases through the courts. So that's the proposition, and that's a Supreme Court case, but that's an important proposition that supports that you should look at these on an individual basis. Doesn't your argument mean that in a class action, the punitive damages should be higher because the individual class members don't get that much? In some cases, yes. In some cases, no. It strikes me as a basic proposition that if you have a case in which you have two people involved in a commercial transaction and the reprehensibility is low and there is a large financial reward against one, that's one situation. But here, the fact that Exxon took chances with the livelihoods of 32,000 people, knowingly took chances with the livelihoods of 32,000 people, makes the conduct, at least from a common-sense perspective, worse. Well, here is... May I ask you this? Because I have a little problem with this case. Things keep changing from phase to phase. What is the conduct here that you think is involved? It is taking an individual who you know is an alcoholic and you know is drinking again and you know is drinking and driving and you know is drinking and driving and leaving the bridge and over a period of three years despite warning after warning and despite knowledge from the top of the chain of command to the bottom of the chain of command not doing anything about it. That's the reprehensible conduct. Everybody knew the good Captain Hazelwood had gone through rehab. Everybody knew he was drinking again. In this day and age where drunk driving and indeed drunk driving in safety-sensitive positions is such a huge, huge problem allowing that to happen in a situation in which you know you're going to hurt 32,000 people is a very bad thing. How do you respond to the defendant's argument that under the ADA companies that just fire people for being alcoholics even when they get treatment companies that won't let people blind and one-eyed drive big trucks can run afoul of ADA requirements? I want to respond to it directly. That issue was tried. That was an Exxon defense. The Exxon defense was put forward by a fellow named Iorossi who was the chairman the president of the shipping company. Mr. Iorossi said that was a he talked it over with the human resources director who told him that there was an issue there. Mr. Iorossi later on testifies that he wasn't involved at all in the decision and didn't learn about the decision until afterwards. The human resources director says that conversation never took place. So the issue of why in fact Hazelwood was put on the vessel was tried to the jury in this particular case and it's clear that that wasn't the reason and there are facts supporting an inference that that wasn't the reason and if you take those facts most favorable of the jury verdict, that isn't the reason. It appears from the trial proof and it was day after day if you read the transcript, the transcript reeks of alcohol. It was clear from the the trial proof that Exxon Corporation, at least in the shipping company, had an alcoholic culture that they were enablers and that they were enablers from the top of the company to the bottom of the company and they weren't going to do anything about Captain Hazelwood. That's the transcript and this ADA defense was tried and argued to the jury and the evidence You're saying the jury took that into account when it concluded what? That the conduct was reprehensible. The jury the evidence was such that the jury could have rejected it as a total fabrication and we cite, in our briefs we cite to the IRRC testimony and the testimony of a fellow named Ben Graves and that's clear. We also cite in our briefs just to the ton of evidence that shows that this company was sick. I guess I'm just trying to understand did that go to the jury? Did the jury take that into account with respect to the compensatory damages or what? It was tried as part of the punitive damage case Yes ma'am. I do want to address your concern and it was next in my outline about the ratio the Supreme Court cases clearly talk about the totality of the harm and indeed they talk about more than the totality of the harm and TXO the judgment of TXO if you take into account just the quantified harm was 385 to 1 so the cases uniformly talk about harm. They don't talk about the net punitive damage award. Now the reason for that is kind of interesting The net compensatory damage award The net compensatory damage award If that was the regime then You stand the system on its head for a variety of reasons The first is anytime you did something wrong you could get out of it by paying compensatory damages There would never be any punishment You make that judgment, you go out and settle The second aspect of that is it takes the punishment decision away from society and away from the courts and places it in the hand of the wrongdoer because the wrongdoer can always buy itself out quite simply by settling The third reason it doesn't work It can buy itself out of a good deal of compensatory damage. Well it can and it should be able to do that And it did It did and to answer your question What if Exxon had paid 5 billion dollars in advance of any lawsuit being filed by anyone It had gone around and said we feel terrible about what we did, we don't want you to feel you have to sue us in order to get a sting and had handed out 5 billion dollars the total amount that the jury found was due. Would you say that they should nevertheless be liable for another 5 billion? Probably not If they had paid out the compensatory plus 5 billion Probably not You asked early on with regard to these payments Where in the analysis do you place the payments Exxon made a decision here as to how it wanted to do it when it tried the case It resulted in two things. The first was Exxon argued to the jury that its payments made it less reprehensible and they got a jury instruction I think the jury instruction number is 37 which allowed them to argue the voluntary payments in the context of everything that went on before and went on after It was part of the discussion with the jury about how bad it was and it was argued that way That also at the same time led to the damage stipulation We stipulated to what the harm was in the case and the trial court's finding of 513 million dollars takes that stipulation as the basis and it resolves a couple of the open stipulation Well, one of the things that I find difficult here is that, as I understand it, you are arguing that this was tried, this was found, this was taken into account As I understand it, our standard with respect to due process review, which is what we're supposed to be talking about is de novo So what is it, in your view, that we're supposed to be looking at de novo I'm going to answer the question honestly and not how I plan to answer it laughter That's refreshing laughter I realize that there are some who don't think that 9th Circuit precedent is binding but Supreme Court precedent is and Cooper says that we do just what Judge Schroeder said That's right, but you go down different levels and I think her question says at what level does the jury and the district court play a role and at what level do we play a role The ultimate decision of whether the award is grossly excessive is a de novo question That's absolutely clear But what do we look at de novo in deciding that We don't just say, what side of the bed did I get up on No, you take a look at the 3 BMW factors and looking at reprehensibility you take a look at the 5 reprehensibility factors Now that's a good example with regard to the question that you're asking Are the findings with regard to each of the reprehensibility factors, findings of fact and do we get favorable jury inferences when you find out about something being repeated or purposeful or are those questions of fact or are those reviewed de novo and that is right where it breaks down The fact that Exxon knew about Hazelwood's drinking and all of the other facts that the district court made with regard to that are obviously findings of fact by the district court I think you're if I'm understanding you right your intention with this sentence in the Supreme Court's decision in State Farm They said, we reiterated the importance of these 3 guideposts in Cooper Industries and mandated appellate courts to conduct de novo review of a trial court's application of them to a jury's award I had understood that to mean we don't just decide whether the award's excessive or not, we do de novo review of application of each of the 3 guideposts At the top level, but in order to do that review you need facts and the facts that go into that review are taken most favorably to the winner and you say that in the first sentence in Baines I mean, you do say it right in the first sentence in Baines. It gets mushy in the middle I mean, when I said I'm going to talk about it honestly, it gets mushy in the middle but you do have findings of fact with regard to harm and the amount of harm you have findings of fact with regard to the specifics of the reprehensibility and you have findings of fact with the maximum nature of the fines I don't understand, we don't have a special verdict What do you mean by findings of fact? This again gets mushy You want us to defer to what the district court said factually in its last decision when he was analyzing application of the 3 factors That's correct On the factual issues, that's correct and I think the Supreme Court makes that clear He didn't say he was making findings of fact If you read I don't know if we could defer to him anyway under that sentence I think Cooper indicates that you do defer to his findings of fact Cooper was a jury case and in Cooper the district court in Cooper did exactly the same thing that you asked Judge Holland to do here and Cooper talks about deferring to his findings of fact in a jury case Another way to answer the same question is you've had 3 or 4 opinions in this case from Judge Holland The first opinion was in the old context of reviewing the jury award If you go back to the last opinion the one that you're reviewing here He talks in terms of finding facts He thought that was your charge to him to find facts and he takes into consideration the jury verdict but the syntax in his opinion is a fact-finding syntax Well, the Supreme Court keeps kind of changing Oh, I would say another thing on that the way you phrased the question to me Judge Kleinfeld I think to some extent overstated what the nature of the inquiry is The inquiry is the award grossly excessive It isn't whether it's a proper award or near a proper award The inquiry is so far out of bounds that it violates the Constitution and in this particular case because of the number of people that were hurt because of the amount of damage that was done and because of the exceptional notice that Exxon Corporation had with regard to the ballpark that it was playing in the punishment is fair It's large, but it's fair We covered a lot of territory and I'm attempting to find where I am in my outline I did want to talk for a minute about what is a basic issue and Mr. Dellinger raised it and I want to raise it and you raised it and that is the deterrence with regard to what happened here and the sufficiency of the deterrence with regard to what happened here and I have a couple of observations on that The first is we know that prior to the grounding Exxon knew both the dangers of putting Hazelwood in charge of the vessel and the dangers of having that vessel under his command in Prince William Sound and that didn't deter them I think because of the fact that they were not rational decision makers as the district court found and that they were operating in the context of this alcoholic culture but we know that the scope of this damage which happened pretty well as envisioned was known to the company and every aspect of this risk was known to the company, almost to a certainty They had perfect knowledge with regard to Joe, they had perfect knowledge with regard to the sound, they had perfect knowledge with regard to the fishermen and they did it anyway and they weren't deterred My second observation on just the question of deterrence and then I'll get to punishment is the district court at some point in time I don't really get the deterrence it seems to me like even if they were totally unmindful of the harm to the environment and the liability that they could be hammered with for harm to the environment and even if they were totally unmindful of the economic harm to others and how they could be hammered for doing it still they wouldn't want to lose their 11 million gallons of oil But they did They can't be indifferent to losing their cargoes I understand that but what were the facts the facts at trial were they were indifferent to it the facts at trial were they put this whole thing in play knowing where it was going to go and that's what we tried and they argued to the jury this was a mere accident they argued that to the jury but that wasn't You're saying anytime somebody has an accident that shows they were indifferent utterly unmindful No, I'm saying I'm saying if you put a drunk in charge of a super tanker in Prince William Sound, Alaska knowing what exactly the consequences of that are going to be that that is reprehensible conduct That has to be a jury question I'm still struggling with this what is it that we're reviewing? That has to be a jury question as to whether or not they did this knowingly What they did has to be for the jury That's a correct statement Now on the question of the reprehensibility of what they did without being in the jury room it's kind of hard to figure out to review De Novo how reprehensible it is Let's discuss that both in the context of State Farm versus the Campbells in the context of this particular case Why don't you also discuss it in the context of Halau versus the state of Marcos the people who were tortured and killed by the Ferdinand Marcos regime That was a terrible case We said that was more reprehensible torturing and killing large numbers of people was more reprehensible than putting a drunk in charge of a supertanker I think it is more reprehensible but I think with regard to the management of a supertanker business putting a drunk in charge of a supertanker knowing that he's drinking is highly reprehensible Marcos case is worse but compare this to the 9 to 1 in Cooper I mean, Cooper's dumb conduct but it isn't putting a drunk in charge of a supertanker Now with regard to reprehensibility in this particular case Judge Schroeder there were over 12 hours of testimony before Judge Holland by the top guys in the company I went back and I read it and I timed it there were over 12 hours by the former chairman the next chairman the president of the shipping company and Judge Holland and the jury got an opportunity to take a look at these guys and Judge Holland came to a couple of conclusions in order 267 he came to the conclusion that the evidence was sufficient for the jury to conclude that there was a lack of contrition by these specific people and in order 364 he came to the conclusion that Exxon has not come to grips with the opprobrium which society rightly attributes to drunk driving there are findings that at least as of the time of trial, five years after the grounding Exxon management didn't get it there are there's also documentary evidence in the record a memo by a fellow named and another memo by the former president of the shipping company a fellow named that months and in one case years after the grounding Exxon was still violating Coast Guard safety standards help me with something more specific before your time runs out my impression from the briefs was frankly that Exxon low-balled the numerator and your side high-balled it, I guess we could expect that what would the numerator be if you use as the numerator actual compensatory damages minus amounts paid before trial not before judgment but before trial by this particular defendant when Exxon tried to cut the numerator down, low-balling it as I characterized it it took credit for money that was paid by other parties not just itself and money that was paid after the trial commenced I think we run the number at $360,000,000 $360,000,000 would be the numerator if you don't count prepays prepays and a couple of other categories and we do that calculation in the brief there's a calculation around page 46, something like that it is, it's towards the end, but we do the calculation at the brief I would say though and this is probably the most important thing that I do want to say and that is this case is like TXO in that there is an awful lot of emotional damage that was just the plain result of hurting 32,000 people's jobs the nature of things tells you that that's the case if I understood that argument, you're trying to use the emotional damage that always flows from great economic harm to turn this into a personal injury case for purposes of that Supreme Court dichotomy between physical injury cases and economic harm cases, is that right? No, the first 5 6ths of the statement about what I'm doing are correct, what I'm doing is I am relying on the proposition in footnote 11 of the Cooper decision in footnote 11 of the Cooper decision and in this court's Planned Parenthood decision and in other decisions the proposition is recognized that there are other intangibles that go with economic harm and in old-fashioned tort regimes, and Admiralty is an old-fashioned tort regime, you take those things into consideration in assessing punitive damages, and footnote 11 in Cooper talks a great length about that so I'm relying on footnote 11 in Cooper with regard to that and I'm relying on TXO with regard to potential damage, if you take emotional distress and if you take I'm over my time if you take emotional distress and you take potential harm together it isn't a 9 to 1 case, this is only a 9 to 1 case if you take a look at the hard economic damages which the Supreme Court precedent tells you that that's what you're supposed to look at I won't even re-pitch thank you very much thank you counsel thank you ma'am sir very quickly if you take the 19.5 million plus the state court judgment 23 and you added to it the amounts that were paid prior to the judgment but after or during the trial that would be another 70 million dollars plus $15 million were settlements post-trial but pre-judgment that 20 plus 70 plus 15 gets you to 55 million you start the other way from 513 we take off the 300 million that was paid before hold on I lost you there I got different numbers when I went through my notes than your total give it to me again I'm sorry you did because I'm the 20 million dollars that was paid pre-judgment but post-trial 15 million dollars in settlement paid during trial that is 55 million dollars the difference between that gap and the 513 million dollars is the 300 million that was paid not just before judgment but before trial plus the 98 million dollars in alieska funds and other matters very quickly I don't see how you possibly get to a billion dollars even reading your opinion because the one time I saw that number was with respect to hypothetically 18 U.S.C. 3571 twice the loss as I say we don't think the loss is anywhere near 513 but State Farm came along and warns against suspected abuse of criminal penalties because they're speculative and you don't meet the standard of proof secondly 3553 of the sentencing guidelines cuts off that whatever is necessary for punishment and deterrence thirdly we know the answer because as this court said the fine is a significant data because at 150 million it was agreed to it represents a adversarial judgment by the executive office of the state and federal governments for public responsibility for seeking the appropriate that's punishment for the environmental harm we understand your position and this is a small piece and finally Judge Schroeder the court did say that the representability is reduced by the expenditure of millions of dollars representability should be discounted to I said that so I with that I thank you for you unless the court is further are you saying that the numerator if you count compensatory damages minus minus amounts that were paid before trial began and my and you don't give Exxon credit for amounts that other defendants paid comes to around 150 million I don't think that's I'm not sure what in terms of giving them credit well the judge it was 19 million dollars you take the amounts you ask about how much of that was not paid before the trial but only during or after the trial let's start with the compensatory damages award that was 19.5 million dollars and you add to that 20 plus 20 you add to that 20 another 20 and 15 which are the amounts that were paid before judgment but but during trial that gets you to 55 million dollars I don't know why you would possibly do it but if you added the amount that was owed by Alieska for their separate negligence that is 98 million dollars which we think shouldn't be added. We understand that. You have more than used your time. Thank you. The case just argued is That concludes the court's calendar and the court stands adjourned.
judges: Schroeder, Browning, Kleinfeld